# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL PURCHASING AND SUPPLY CHAIN MANAGEMENT INSTITUTE LLC, <br><br>       Plaintiff, <br><br>       v. <br><br> INTERNATIONAL PROCUREMENT AND SUPPLY CHAIN MANAGEMENT INSTITUTE LLC, <br><br>       Defendant. | C.A. No. 24-1018-CFC |

## [PROPOSED] DEFAULT JUDGMENT AND ORDER OF INJUNCTION

At Wilmington, this ___ day of _____, 2024;

Before the Court is a Motion for Entry of Default Judgment and Order of Injunction (D.I. 10) filed by Plaintiff International Purchasing and Supply Chain Management Institute LLC ("IPSCMI").

The Clerk of Court has entered default pursuant to Federal Rule of Civil Procedure 55(a).  (D.I. 8).  IPSCMI has served the Clerk's Entry of Default on Defendant International Procurement and Supply Chain Management Institute LLC ("Defendant").  (D.I. 9-1).  IPSCMI has also served a copy of its Motion for Entry of Default Judgment and Order of Injunction on Defendant.  (D.I. __).  Defendant has failed to appear.

IPSCMI now moves the Court to enter default judgment in its favor and against Defendant under Rule 55(b).  IPSCMI also moves for a permanent injunction against Defendant, an award of costs, for a finding that this case is exceptional, and for an award of fees.

Under the Rules, "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."  Fed. R. Civ. P. 65(d).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Findings of Fact

The Court makes the following findings of fact:

1.    IPSCMI is a professional certification institute well-known in the United States and globally.  Since at least 2005, IPSCMI has used the marks INTERNATIONAL PURCHASING AND SUPPLY CHAIN MANAGEMENT INSTITUTE and IPSCMI ("IPSCMI Marks") in business.  (D.I. 1 at ¶ 9).

2.    In 2004, IPSCMI launched the innovative and new supply chain certifications of Certified International Supply Chain Professional (CISCP) and Certified International Supply Chain Manager (CISCM), which were the first certifications of their kind.  (*Id.* at ¶ 7).

3.    IPSCMI presently maintains a number of certification programs designated by certification marks that include: CISCP Level 1, CISCM Level 2, CISCC Level 3, CIPP Level 1, CIPM Level 2, CIPC Level 3, CICCM, CIPN, CITLP, CISM, CIWIM, CMPO, PMPPC, and CICM ("IPSCMI's Certification Marks").  IPSCMI uses its Name Marks and Certification Marks (collectively, "IPSCMI's Marks") in concert to designate IPSCMI as the source of its certifications.  (*Id.* at ¶¶ 14–17).

4.    IPSCMI provides purchasing and supply chain management courses and programs in the United States and abroad through a network of alliance partners that contract with IPSCMI to conduct IPSCMI's programs.  IPSCMI has established alliance partner relationships with more than 50 organizations worldwide and has certified more than 60,000 students from 62 countries.  (*Id.* at ¶ 8).

5.    Certification programs consist of three essential parts: training, testing, and certification.  (Graw Declaration at ¶ 3)[1].  Students who seek certifications receive training.  They are tested and, upon receiving a passing score, earn certifications.  (Graw Decl. at ¶ 4).

---

[1] The Declaration of LeRoy H. Graw ("Graw Decl.") and attached Exhibits A-D is filed contemporaneously with this proposed order.

6.      IPSCMI certifications last for 5 years, at which point, students must show recent training and/or professional experiences to recertify.  (Graw Decl. at ¶ 8).  Once a student has obtained a certification, IPSCMI expects to provide that student training and/or recertification, either directly or through alliance partners. (Graw Decl. at ¶¶ 8, 10).

7.      IPSCMI maintains contractual relationships with alliance partners who provide training and/or testing services to students.  (D.I. 1 at ¶¶ 8, 67; Graw Decl. at ¶ 6).  IPSCMI's alliance partners work in various geographic regions to host conferences, perform in-person and virtual training, arrange testing, and work with national and regional authorities to facilitate marketplace uptake of IPSCMI certifications.  (Graw Decl. at ¶ 7).

8.      As a result of continued operation in the marketplace since 2005, students and alliance partners within the relevant industries perceive IPSCMI's well-known Marks to be associated with high-quality instruction and certification. (D.I. 1 at ¶ 10).

9.      IPSCMI maintains a website at IPSCMI.ORG where it provides students and alliance partners information about its programs.  IPSCMI's website employs a blue and white color theme.  The website provides a U.S. telephone

number with a Delaware ("302") area code accompanied by an admin@ipscmi.org

email address in the site header



and further identifies IPSCMI's address as "16192 Coastal Highway Lewes,

Delaware 19958, USA" in the site footer as in the image below.  (*Id.* at ¶ 11).



10.     Repeated across IPSCMI's website is an "About IPSCMI" description

in a sans serif typeface using white letters on a dark blue background with a light

blue bar below the heading:

The text reads: "IPSCMI is a prestigious and leading professional institute offering purchasing and supply chain management certifications throughout the world in all modes of instruction, including conventional public seminars, online courses, in-house seminars."  (*Id.* at ¶ 12).

11.    IPSCMI maintains an electronic presence using the IPSCMI Marks on online communities and platforms including:  LinkedIn (as "IPSCMI" at https://www.linkedin.com/company/the-international-purchasing-and-supply-chain-management-institute/), and Facebook (as "International Purchasing and Supply Chain Management Institute-IPSCMI" at https://www.facebook.com/International-Purchasing-and-Supply-Chain-Management-Institute-IPSCMI-103107931604733).  (*Id.* at ¶ 13).

12.    In view of IPSCMI's Marks and established position in the industry, there is a reasonable probability that students seeking one or more of IPSCMI's well-known certifications would seek instruction and/or certification from IPSCMI

and/or one of IPSCMI's alliance partners.  (*Id.* at ¶ 55).  Similarly, there is a reasonable probability that potential alliance partners seeking to provide instruction and testing related to one or more of IPSCMI's well-known certifications would seek a business relationship with IPSCMI.  (*Id.* at ¶ 61).

13.     The allegations in the complaint, the Graw Declaration, and the documents attached to the Graw Declaration make it clear that consumers and the general public draw an association between IPSCMI and the certifications that it offers.

14.     Defendant was organized in Delaware in October 2023.  (*Id.* at ¶ 18). Beginning at least in May 2024, Defendant has operated websites at IPSCMI.COM and IPSCMI.US.  (*Id.* at ¶ 19).  On these websites and elsewhere, Defendant uses INTERNATIONAL PROCUREMENT AND SUPPLY CHAIN MANAGEMENT INSTITUTE and the initialism IPSCMI.  These websites employ a blue and white color theme similar to IPSCMI's website.  (*Id.* at ¶ 20).

15.     Defendant's websites provide a U.S. telephone number with a Delaware ("302") area code accompanied by an email address: admin@ipscmi.us in the site header



and further identify Defendant's address as "16192 Coastal Highway Lewes, Delaware 19958, USA" in the site footer as in the image below.  (*Id.* at ¶ 21).



16.    The footer of Defendant's website includes an "IPSCMI" heading with a description of Defendant's organization that is substantially similar to the "About IPSCMI" heading in the footer of IPSCMI's website.  Moreover, the description on Defendant's website is in a nearly identical sans serif typeface using white letters on a dark blue background with a light blue bar below the heading:

**IPSCMI**

IPSCMI, an official and top professional institute, provides procurement and supply chain management certifications globally in various instructional methods, including traditional public seminars, online courses, and in-house seminars.

The text reads: "IPSCMI, an official and top professional institute, provides procurement and supply chain management certifications globally in various instructional methods, including traditional public seminars, online courses, and in-house seminars."  This description is substantially similar to the "About IPSCMI" description on IPSCMI's website – with words replaced with synonyms but with the overall structure and content remaining the same.  (*Id.* at ¶ 22).

17.    Since at least May, 2024, Defendant has maintained an electronic presence on online communities and platforms including: LinkedIn (as "IPSCMI Official" at https://www.linkedin.com/company/ipscmi-official), Twitter or X (as "IPSCMI" at https://twitter.com/ipscmi), and Facebook (as "IPSCMI" and "Ipscmi" at https://www.facebook.com/ipscmi.official).  (*Id.* at ¶ 23).

18.    Defendant's website states that Defendant maintains supply chain management, purchasing management, and other certification programs. (*Id.* at ¶¶ 26, 28–29).  Defendant has given its certifications names that are nearly identical to the marks used by IPSCMI, including:  CISCP, CISCM, CIPP, CIPM, CICCM, CIPN, CITLP, CISM, CIWIM, CMPO, PMPPC, and CICM.  (*Id.* at ¶ 31).

19.    Defendant's website equates these certifications with "IPSCMI", stating in testimonials that—through Defendant—an individual can get a "CISCM certification from IPSCMI", a "CMPO certification from IPSCMI", and a "CISM-IPSCMI certification[.]"  (*Id.* at ¶¶ 24, 27, 30).

20.    The names of IPSCMI and Defendant are nearly identical and differ by the word "purchasing" (in IPSCMI's name) and "procurement" (in Defendant's name).  These 2 words are synonyms for each other and are confusingly similar.  Defendant's use of its name is likely to cause confusion or mistake.

21.    That Defendant has chosen to use "IPSCMI" to refer to itself on its website, in email, on social media, and in other forms creates a likelihood of confusion.  This confusion is compounded by the fact that Defendant is in the same business as IPSCMI and offers the same training, testing, and certification services.

22.    That Defendant has chosen to use websites IPSCMI.COM[2] and IPSCMI.US in association with "IPSCMI" and "INTERNATIONAL PROCUREMENT AND SUPPLY CHAIN MANAGEMENT INSTITUTE" training, testing, and certification services creates a likelihood of confusion.

23.    While IPSCMI and Defendant offer certifications that the other does not, there are approximately 12 certifications of Defendant that are either the same as or nearly identical to IPSCMI's certifications.

24.    The minor differences in certifications include the following.  First, for example, IPSCMI offers CISCP LEVEL 1, and Defendant offers CISCP, without "LEVEL 1"– both certifications stand for "Certified International Supply

---

[2] The Court notes that the IPSCMI.COM website presently redirects to the IPSCMI.US website.

Chain Professional".  Second, IPSCMI offers CIPP, LEVEL 1, which stands for "Certified International Purchasing/Procurement Professional," but Defendant offers CIPP, without LEVEL 1 and without "Purchasing/" in the name.  Similar differences exist between the parties CISCM and CIPM certifications.

25.     Regardless, Defendant offers certifications that are identical to 8 of IPSCMI's certifications, including:  Certified International Commercial Contracts Manager (CICCM); Certified International Professional Negotiator (CIPN); Certified International Trade, Shipping & Logistics Professional (CITLP); Certified International Sourcing Manager (CISM); Certified International Warehouse and Inventory Manager (CIWIM); Certified Manager of Production Operation (CMPO); Project Management Professional in Procurement and Contracting (PMPPC); and Certified International Category Manager (CICM).

26.     Defendant's use of these certifications in association with purchasing and supply chain management is likely to cause confusion in the marketplace.

27.     In May 2024, Defendant sent emails from ADMIN@IPSCMI.US to a number of IPSCMI instructors and alliance partners, offering "IPSCMI" testing and certification services at the IPSCMI.US website as an alternative to testing and certification services available at Plaintiff's IPSCMI.ORG website.  (*Id.* at ¶ 34).

28.     As a result of these contacts, and the confusing similarities between IPSCMI's certifications and Defendant's certifications, IPSCMI's instructors and

alliance partners contacted IPSCMI about a so-called "Fake IPSCMI." (Graw Decl. at ¶ 11). The alliance partners were confused about the source of the emails from Defendant and the source of the certification programs offered. These individuals were confused as to whether Defendant and IPSCMI were the same organization or whether Defendant was affiliated with IPSCMI. (D.I. 1 at ¶ 35; Graw Decl. at ¶ 12, Exhibit A).

29.    Students have also been confused between IPSCMI and Defendant. (D.I. 1 at ¶ 40; Graw Decl. at ¶¶ 13–14, Exhibit B). In email communications, Defendant is virtually indistinguishable from IPSCMI. (Graw Decl. at ¶¶ 15–16, Exhibit C).

30.    Also at times after May 2024, at least one student previously certified in IPSCMI's programs has taken a certification examination offered by Defendant at Defendant's website (IPSCMI.US) with the expectation of receiving a certification provided by IPSCMI. (D.I. 1 at ¶ 37; Graw Decl., Exhibit B at 1–3).

31.    On July 15, 2024, IPSCMI sent Defendant a cease and desist letter, demanding that Defendant cease all activities infringing IPSCMI's Marks. Defendant acknowledged receipt of this letter. (D.I. 1 at ¶¶ 38–39).

32.    Since July 2024, Defendant has continued to contact IPSCMI's alliance partners and students via email to offer purchasing/procurement and supply chain management certifications. For example, Defendant has sent

marketing offers to individuals holding IPSCMI's well-known certifications, offering "Exclusive Lifetime Certifications".  (D.I. 1 at ¶ 40; Graw Decl., Exhibit B at 2).  As a result of these mailings, students and alliance partners continue to contact IPSCMI because they are confused as to whether:  Defendant and IPSCMI are the same organization, Defendant's certifications are the same as IPSCMI's, and/or the emails are false or fraudulent.  (D.I. 1 at ¶ 40; Graw Decl. at ¶¶ 11-14, Exhibits A–B).

33.    Based upon Defendant's actions offering its testing and certification services as an "alternative" to testing as IPSCMI's website, IPSCMI's alliance partner in Egypt has told one or more students enrolled in IPSCMI's programs that the students have a choice between using IPSCMI's website (IPSCMI.ORG) or Defendant's website (IPSCMI.US) to take certification examinations.  (D.I. 1 at ¶¶ 36, 71; Graw Decl. at ¶ 17).  As a result of the partner's acts, in September 2024, IPSCMI terminated the contract between the parties.  (D.I. 1 at ¶¶ 36, 71; Graw Decl. at ¶¶ 17–19, Exhibit D).

34.    Defendant's acts are likely to cause confusion whether IPSCMI and Defendant are the same entity and/or are affiliated or connected in some way.

35.    Defendant's acts misrepresent the nature of Defendant's training, testing, and certification services by creating a connection or association with IPSCMI's certifications.

36.    As a result of Defendant's actions described herein, IPSCMI has suffered and will continue to suffer harm to its business reputation, branding, certifications, relationships with its alliance partners, and relationships with current and prospective students.  (Graw Decl. at ¶ 20).

## B.    Conclusions of Law

### 1.    Default Judgment

"Before entering a default judgment, the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Insight Invs., LLC v. Bos. Mkt. Corp.*, No. 23-CV-1077-GBW, 2024 WL 1637320, at *2 (D. Del. Apr. 16, 2024) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)) (other citations omitted); *see also Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015).

#### (a)    The unchallenged facts constitute legitimate causes of action

##### (i)    Count I: False Designation of Origin

The unchallenged facts constitute a legitimate cause of action for false designation of origin under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). The statute states:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any

combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

As discussed above, Defendant's acts create a likelihood of confusion as to the whether IPSCMI and Defendant are the same company. Defendant's acts, including naming its certifications the same as IPSCMI's certifications which misrepresents that Defendant's certifications are either the same as IPSCMI's or that IPSCMI also certifies Defendant's certifications. For these reasons, the unchallenged facts constitute a legitimate cause of action for false designation of origin under the Lanham Act.

### (ii)    Count II: Delaware Deceptive Trade Practices

The unchallenged facts constitute several violations of the Delaware

Deceptive Trade Practices Act.  6 *Del. C.* §§ 2531 *et seq.*  Under the statute:

> A person engages in a deceptive trade practice when, in
> the course of a business, vocation, or occupation, that
> person:
>
> (1) Passes off goods or services as those of another;
>
> (2) Causes likelihood of confusion or of
> misunderstanding as to the source, sponsorship, approval,
> or certification of goods or services;
>
> (3) Causes likelihood of confusion or of
> misunderstanding as to affiliation, connection, or
> association with, or certification by, another;
>
> . . .
>
> (5) Represents that goods or services have sponsorship,
> approval, characteristics, ingredients, uses, benefits, or
> quantities that they do not have, or that a person has a
> sponsorship, approval, status, affiliation, or connection
> that the person does not have;
>
> . . .
>
> (7) Represents that goods or services are of a particular
> standard, quality, or grade, or that goods are of a
> particular style or model, if they are of another[.]

6 *Del. C.* § 2532(a).

The unchallenged facts show that Defendant is passing off its testing and

certification services as those of Plaintiff.  *Id.*(a)(1).  Defendant is also causing a

likelihood of confusion or of misunderstanding that Plaintiff is the source of the

certifications for which Defendant offers testing at Defendant's IPSCMI.US website. *Id.*(a)(2).

Similarly, as discussed with respect to Count I, Defendant is causing a likelihood of confusion or of misunderstanding as to the connection or association between Defendant and Plaintiff, even though no such relationship exists. Specifically, the likelihood of confusion or of misunderstanding as to the connections and associations include: (a) that Defendant and Plaintiff are the same entity; (b) that Defendant's training or testing will provide a student with Plaintiff's certifications; and/or that Defendant's certifications and Plaintiff's certifications are one and the same. which are or between Defendant's certifications and Plaintiff, even though no such relationship exists. *Id.*(a)(3).

With respect to testing and individual certifications, as discussed above, Defendant's acts represent to students that the underlying certifications are those of Plaintiff and that students will, in obtaining Defendant's certifications, have the benefits associated with Plaintiff's certifications, including access to jobs requiring Plaintiff's certifications, access to markets where Plaintiff's certifications are required, and access to specific countries and regions where Plaintiff's certifications are registered and required as part of doing business. *Id.*(a)(5).

Finally, the unchallenged facts also show that Defendant's acts represent that its certification programs are of a particular standard, quality, or grade, namely that

Defendant's certification programs are of the same standard, quality, or grade as

Plaintiff's certification programs.  *Id.*(a)(7).

For these reasons, the unchallenged facts demonstrate that Defendant has

violated the Delaware Deceptive Trade Practices Act.

### (iii)    Count III: Tortious Interference

Defendant's acts constitute tortious interference with both existing and

prospective business relations.  "Under Delaware law, to prevail on a tortious

interference claim, a plaintiff must show that the defendant knew of a contract

involving the plaintiff, intentionally and improperly interfered with it, and was a

significant factor in causing the contract to be breached or otherwise terminated."

*Cousins v. Goodier*, 283 A.3d 1140, 1160 (Del. 2022) (citations omitted).

### (A)    Existing Business Relations

As discussed above, IPSCMI maintains contractual relationships with

alliance partners that provide training and testing services in support of

certification programs.  (D.I. 1 at ¶ 67).  These alliance partners are identified on

IPSCMI's website.  IPSCMI, https://www.ipscmi.org/List_of_Partners/ (Last

Visited Oct. 16, 2024).  As is demonstrated by Defendant's actions in contacting

IPSCMI's alliance partners and offering services to these alliance partners as an

alternative to IPSCMI (D.I. 1 at ¶ 34), Defendant clearly knew of these business

relationships and intentionally interfered with them.  Defendant's actions were

18

improper, because Defendant sought to capitalize on confusion between Defendant and IPSCMI, including confusion between Defendant's certifications and IPSCMI's well-known certifications. As a result, one of IPSCMI's alliance partners breached its contract with IPSCMI by offering its students the option of pursuing testing with either IPSCMI or Defendant. (*Id.* at ¶¶ 36, 71; Graw Decl. at ¶ 17). But for Defendant's actions, the alliance partner would not have offered the "alternative" and breached the contract. IPSCMI has since terminated the contract with this alliance partner. (Graw Decl. at ¶¶ 18–19, Exhibit D). This has caused IPSCMI harm. (D.I. 1 at ¶¶ 72–73; Graw Decl. at ¶ 20). For these reasons, the unchallenged facts support a claim of tortious interference with existing business relations.

### (B)    Prospective Business Relations

The unchallenged facts show that even though IPSCMI does not maintain a contractual relationship with students who obtain IPSCMI's certifications, IPSCMI has a reasonable expectation that students seeking IPSCMI's well-known certifications will do business with IPSCMI and/or IPSCMI's alliance partners to obtain certifications. (D.I. 1 at ¶ 55). IPSCMI also has a reasonable expectation that potential alliance partners seeking to provide instruction and testing associated with IPSCMI's well-known certifications would seek a business relationship with

IPSCMI.  (*Id.* at ¶ 61).  Moreover, IPSCMI has a reasonable expectation that a percentage of students will recertify after 5 years.  (Graw Decl. at ¶ 10).

Defendant demonstrated knowledge about both certification and recertification by sending marketing offers to students, such as those offering "Exclusive Lifetime Certifications."  (D.I. 1 at ¶ 40; Graw Decl., Exhibit B at 2).  Defendant's acts were clearly intentional marketing activities that sought to interfere with the reasonably expected activities of student training, testing, certification and/or recertification associated with IPSCMI's well-known certifications.  Defendant's actions were improper, because Defendant sought to capitalize on confusion between Defendant and IPSCMI, including confusion between Defendant's certifications and IPSCMI's well-known certifications.  This has caused students to purchase testing, certification and/or recertification from Defendant with an expectation of  obtaining IPSCMI's certifications.  Alliance partners have also done business with Defendant with an expectation of providing training and testing for IPSCMI's certifications.  This has caused IPSCMI harm.  (D.I. 1 at ¶¶ 59–60, 65–66; Graw Decl. at ¶ 20).  For these reasons, the unchallenged facts support a claim of tortious interference with prospective business relations.

**(b)    The *Chamberlain* Factors Support Default Judgment**

"Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) *see Eden Foods, Inc. v. George*, No. CV 22-409-RGA, 2023 WL 2926592, at *2 (D. Del. Apr. 13, 2023) (applying the *Chamberlain* factors when a defendant has not appeared), *report and recommendation adopted,* No. CV 22-409-RGA, 2023 WL 3275765 (D. Del. May 5, 2023).

The *Chamberlain* factors support entry of default judgment in favor of IPSCMI and against Defendant.  "When a district court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 161 (3d Cir. 2022) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).  Taking the factual allegations in the Complaint as true, and for the reasons discussed above, IPSCMI has demonstrated that Defendant has violated IPSCMI's rights against false designation of origin under the Lanham Act, deceptive trade practices under the Delaware's Deceptive Trade Practices act, and tortious interference under the common law.

First, IPSCMI will be prejudiced if default is denied. Violation of IPSCMI's rights, with no other avenue for IPSCMI to seek a remedy, is sufficient to establish the first factor. *E.g.*, *BTL Indus., Inc. v. Advanced Regenerative Med. LLC*, No. CV 23-359-WCB, 2024 WL 455218, at *3 (D. Del. Feb. 6, 2024) (citations omitted). Second, Defendant has not appeared and, therefore, has no litigable defense at this point. *E.g.*, *DoiT Int'l, LTD v. BlackSwan Techs., Inc.*, No. CV 23-560-MN, 2023 WL 6211722, at *2 (D. Del. Sept. 25, 2023), *report and recommendation adopted sub nom. DoiT Int'l, Ltd. v. BlackSwan Techs., Inc.*, No. CV 23-560 (MN), 2023 WL 7408034 (D. Del. Nov. 9, 2023). And finally, Defendant's failure to appear amounts to culpable conduct with respect to the third factor. *Eden Foods*, 2023 WL 2926592, at *4 (citation omitted). For these reasons, default judgment is appropriate.

### 2.    A Permanent Injunction Is Appropriate

"[A] party seeking a permanent injunction must make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

First, the facts show that IPSCMI has been irreparably injured.  Defendant is essentially pretending to be IPSCMI and selling IPSCMI's well-known certifications.  The Lanham Act provides injunctive relief for false designations of origin under 15 U.S.C. § 1125(a) and states that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction[.]"  15 U.S.C. § 1116.  Additionally, the Third Circuit has held that "[a] finding of irreparable injury can also be based on likely confusion." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196-97 (3d Cir. 1990) (citations omitted).  Here, the unchallenged facts demonstrate a likelihood of confusion and a violation of § 1125(a), which supports at least the rebuttable presumption of irreparable injury under the false designation claim.  For the same reasons, Delaware law supports a finding of irreparable injury with respect to the Deceptive Trade Practices and tortious interference claims.  6 *Del. C.* § 2533.

Second, IPSCMI has no adequate remedy at law to compensate it for consumer confusion.  This is not a simple case of marketplace competition where students choose between different alternatives for certification programs.  Here, the unchallenged facts show a purposeful likelihood of confusion in which students purchase services from Defendant with the expectation that they receive Plaintiff's well-known certifications.  Not only does IPSCMI not receive revenues, but the

student does not obtain the intended certification. Any confusion or harm to the student will ultimately harm IPSCMI, because the student has purchased an "IPSCMI" certification and expects IPSCMI to resolve the issue. (*E.g.*, Graw Decl., Exhibit B at 4 (contacting IPSCMI to resolve student confusion)). An award of damages would not compensate IPSCMI for this tremendous loss of goodwill.

Third, the balance of the hardships favors IPSCMI. "There is no cognizable hardship" to Defendant in prohibiting it from violating IPSCMI's rights against false designations of origin, deceptive trade practices, and tortious interference with business relations. *BTL Indus.*, 2024 WL 455218, at *5.

Finally, "[p]ublic interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused. *Opticians Ass'n of Am.*, 920 F.2d at 197. The public interest disfavors marketplace confusion associated with false designations of origin, deceptive trade practices and tortious interference.

All four factors favor a permanent injunction in favor of IPSCMI and against Defendant.

### 3.    The Unchallenged Facts Support an Award of Costs, a Finding that This Case is Exceptional, and an Award of Fees

Under the Lanham Act, having established a violation for false designation of origin, "the plaintiff shall be entitled . . . subject to the principles of equity, to

recover . . . the costs of the action." 15 U.S.C. § 1117(a). In view of the default judgment, an award of costs is appropriate.

Also under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party. *Id.*; *see also* 6 *Del. C.* § 2533(b) ("Costs or attorneys' fees may be assessed against a defendant only if the court finds that defendant has wilfully engaged in a deceptive trade practice."). "Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion." *Rath v. Vita Sanotec, Inc.*, No. CV 17-953 (MN), 2020 WL 5877597, at *2 (D. Del. Oct. 2, 2020) (citation omitted). In this matter, Defendant has willfully copied Plaintiff's name, certifications, URL, and website design. Defendant's apparent strategy is to pass off its own testing and certifications as those of IPSCMI. Here, the merits support a finding that Defendant's conduct is willful and the case is exceptional. *See Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. CV 20-1652-GBW, 2023 WL 6387897, at *3 (D. Del. Sept. 29, 2023) (finding a case to be exceptional when "the Amended Complaint pled facts that Defendants intentionally mislead buyers, sed [sic] Emerson Radio's intellectual property to create confusion, and made false representations about Defendants' association with Emerson Radio."). Therefore, an award of fees is appropriate.

25

## DEFAULT JUDGMENT

Defendant having failed to appear, plead, or otherwise defend, the default of Defendant having been entered (D.I. 8), Defendant having been served with the Clerk's Entry of Default (D.I. 9-1), and Defendant having been served with a copy of the Motion for Default Judgment and Order of Injunction (D.I. __), IT IS HEREBY ORDERED, ADJUGED, and DECREED THAT:

1.    The Clerk of Court is directed to enter Default Judgment against Defendant and in favor of IPSCMI;

2.    Defendant's use of the marks "IPSCMI" and "INTERNATIONAL PROCUREMENT AND SUPPLY CHAIN MANAGEMENT INSTITUTE"; websites at IPSCMI.US and IPSCMI.COM; and social media sites on LinkedIn, X (formerly known as Twitter), and Facebook in connection with certification programs for supply chain management, purchasing management, and other certifications ("Defendant's Use of IPSCMI Marks") is a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive pursuant to Section 43(a) of the Lanham Act.  15. U.S.C. § 1125(a);

3.    Defendant's Use of IPSCMI Marks violates IPSCMI's rights under the Delaware Deceptive Trade Practices Act.  6 Del. C. § 2532, subsections (a)(1), (a)(2), (a)(3), (a)(5), and (a)(7).

4.      Defendant's Use of IPSCMI Marks and Defendant's contacts with Plaintiff's alliance partners constitutes tortious interference with existing business relations in violation of Delaware common law;

5.      Defendant's Use of IPSCMI Marks and Defendant's contacts with students seeking Plaintiff's certifications and prospective alliance partners constitutes tortious interference with prospective business relations in violation of Delaware common law;

6.      Defendant's Use of IPSCMI Marks in violating Plaintiff's Marks is willful and exceptional;

7.      Defendant shall pay IPSCMI the costs of the action and reasonable attorney fees pursuant to 15 U.S.C. § 1117(a) and/or 6 Del. C. § 2533(b); and

8.      Within 14 days of the date of this Judgment, Plaintiff shall file with the Court an application for reasonable attorney fees.

## <u>ORDER OF INJUNCTION</u>

Pursuant to Rule 65(d) and the foregoing findings of fact and conclusions of law, IT IS FURTHER ORDERED THAT:

9.      Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall be permanently enjoined from using the mark, brand name or any other mark(s) or name(s) comprising or

containing the terms "INTERNATIONAL PROCUREMENT AND SUPPLY CHAIN MANAGEMENT INSTITUTE" and/or "IPSCMI" in any manner in connection with any and all operations of its business, including, without limitation, the sale, advertising, promotion or distribution of any of its services;

10.    Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall be permanently enjoined from using the certification mark(s), brand name(s) or any other mark(s) or name(s) comprising or containing the terms "CISCP", "CISCM", "CIPP", "CIPM", "CICCM", "CIPN", "CITLP", "CISM", "CIWIM", "CMPO", "PMPPC", and/or "CICM" in any manner in connection with any and all operations of its business, including, without limitation, the sale, advertising, promotion or distribution of any of its services;

11.    Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall be permanently enjoined from operating websites and otherwise maintaining an electronic presence using the IPSCMI.COM and/or IPSCMI.US domains in any manner in connection with any and all operations of its business, including, without limitation, the sale, advertising, promotion or distribution of any of its services;

28

12.     Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall transfer ownership and control of Defendant's IPSCMI.COM and IPSCMI.US domains to Plaintiff;

13.     Defendant, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, shall transfer ownership and control of its accounts on the following online platforms: LinkedIn (as "IPSCMI Official" at https://www.linkedin.com/company/ipscmi-official), Twitter or X (as "IPSCMI" at https://twitter.com/ipscmi), and Facebook (as "IPSCMI" and "Ipscmi" at https://www.facebook.com/ipscmi.official) to Plaintiff;


On this __ day of _____, 202__, IT IS SO ORDERED


_____
Colm F. Connolly
Chief U.S. District Judge