## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERNATIONAL PURCHASING
AND SUPPLY CHAIN
MANAGEMENT INSTITUTE LLC,

        Plaintiff,

        v.

INTERNATIONAL PROCUREMENT
AND SUPPLY CHAIN
MANAGEMENT INSTITUTE LLC,

        Defendant.

C.A. No. 24-1018-CFC

## PLAINTIFF IPSCMI'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR DEFAULT JUDGMENT AND ORDER OF INJUNCTION

**SMITH KATZENSTEIN & JENKINS LLP**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff International Purchasing and Supply Chain Management Institute LLC*

Dated: October 18, 2024

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................... iii

I.     Nature and Stage of Proceedings .................................................... 1

II.    Summary of Argument .................................................................... 1

III.   Statement of Facts .......................................................................... 2

       A.     IPSCMI ................................................................................ 2

       B.     Defendant ............................................................................ 7

       C.     Acts .................................................................................... 10

IV.    Legal Standards ............................................................................ 12

       A.     Default Judgment ............................................................... 12

       B.     Permanent Injunction ........................................................ 13

V.     Argument ..................................................................................... 14

       A.     The Unchallenged Facts Constitute a Legitimate Cause of Action .... 14

              1.     Count I: False Designation of Origin ........................ 14

              2.     Count II: Delaware Deceptive Trade Practices ......... 17

              3.     Count III: Tortious Interference ................................ 20

       B.     The *Chamberlain* Factors Support Default Judgment ........ 22

       C.     A Permanent Injunction Is Appropriate ............................ 23

       D.     The Unchallenged Facts Support an Award of Costs and a Finding
              that This Case is Exceptional ............................................ 26

VI.    Conclusion ................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*BTL Indus., Inc. v. Advanced Regenerative Med. LLC*, No. CV 23-359-WCB, 2024 WL 455218 (D. Del. Feb. 6, 2024) ............................ 23, 25

*Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000) .......................................13

*Cousins v. Goodier*, 283 A.3d 1140 (Del. 2022).......................................................20

*CPG Prod. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007 (Fed. Cir. 1985)................................................................................15

*DoiT Int'l, LTD v. BlackSwan Techs., Inc.*, No. CV 23-560-MN, 2023 WL 6211722 (D. Del. Sept. 25, 2023)...........................................................23

*Eden Foods, Inc. v. George*, No. CV 22-409-RGA, 2023 WL 2926592 (D. Del. Apr. 13, 2023) ............................................................. 13, 23

*Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. CV 20-1652-GBW, 2023 WL 6387897 (D. Del. Sept. 29, 2023).......................................26

*Insight Invs., LLC v. Bos. Mkt. Corp.*, No. 23-CV-1077-GBW, 2024 WL 1637320 (D. Del. Apr. 16, 2024) ............................................................12

*Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187 (3d Cir. 1990)........................................................................ 24, 25

*Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015)............................13

*PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156 (3d Cir. 2022)...........................................................................22

*Rath v. Vita Sanotec, Inc.*, No. CV 17-953 (MN), 2020 WL 5877597 (D. Del. Oct. 2, 2020) ......................................................................26

*Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept Stores, Inc.*, 299 F.2d 33 (2d Cir. 1962) ......................15

*TD Bank N.A. v. Hill*, 928 F.3d 259 (3d Cir. 2019)..................................................13

**Statutes**

15 U.S.C. § 1116 ...................................................................................24

15 U.S.C. § 1117(a)................................................................................26

15 U.S.C. § 1125(a) (Lanham Act, Section 43(a))...............................14

6 *Del. C.* § 2531 *et seq* (Delaware Deceptive Trade Practices Act) .......................17

6 *Del. C.* § 2532(a)........................................................................ 18, 19

6 *Del. C.* § 2533 ........................................................................... 24, 26

**Rules**

Federal Rule of Civil Procedure 55 .......................................................12

## I.    NATURE AND STAGE OF PROCEEDINGS

Plaintiff International Purchasing and Supply Chain Management Institute

("IPSCMI") operates certification programs for purchasing and supply chain

management professionals.  In the complaint IPSCMI alleges claims for false

designation of origin, deceptive trade practices, and tortious interference based

upon Defendant's confusingly similar uses of Plaintiff's IPSCMI marks,

certification marks, website URLs, social media sites, and so forth.  IPSCMI seeks

to enjoin Defendant's activities, to shut down Defendant's web- and social media

sites, and to gain control of the offending web domains.

IPSCMI filed the Complaint on September 9, 2024 and served Defendant the

following day.  (D.I. 1; D.I. 5).  The deadline to answer or otherwise respond to the

Complaint was October 1, 2024.  Defendant did not appear.  The Clerk of Court

entered default on October 3, 2024.  (D.I. 8).  On October 4, 2024, IPSCMI served

the Entry of Default on Defendant.  (D.I. 9-1).  Plaintiff presently moves for

default judgment, a permanent injunction against Defendant, a determination that

this case is exceptional, and an award of fees and costs.

## II.    SUMMARY OF ARGUMENT

1.    The unchallenged facts constitute legitimate causes of action to

protect IPSCMI's Marks from false designations of origin under the Lanham Act,

violations of the Delaware Deceptive Trade Practices Act, and tortious interference under Delaware law.

2.      Default judgment is appropriate under the *Chamberlain* factors, because IPSCMI will be prejudiced if default is denied, Defendant does not have a litigable defense, and Defendant's delay is due to culpable conduct.

3.      A permanent injunction against Defendant is appropriate, because IPSCMI has suffered, and will continue to suffer, irreparable injury for which there is no adequate legal remedy.  Both the balance of hardships and public interest favor an injunction.

4.      Defendant's blatant copying of IPSCMI's name and certifications warrants an award of costs and a finding that this case is exceptional.

## III.   STATEMENT OF FACTS

The unchallenged facts are as follows:

### A.   IPSCMI

IPSCMI is a professional certification institute well-known in the United States and globally.  Since at least 2005, IPSCMI has used the marks INTERNATIONAL PURCHASING AND SUPPLY CHAIN MANAGEMENT INSTITUTE and IPSCMI ("IPSCMI Marks") in business.  (D.I. 1 at ¶ 9).

In 2004, IPSCMI launched the innovative and new supply chain certifications of Certified International Supply Chain Professional (CISCP) and

Certified International Supply Chain Manager (CISCM), which were the first certifications of their kind.  (*Id.* at ¶ 7).

IPSCMI presently maintains a number of certification programs designated by certification marks that include: CISCP Level 1, CISCM Level 2, CISCC Level 3, CIPP Level 1, CIPM Level 2, CIPC Level 3, CICCM, CIPN, CITLP, CISM, CIWIM, CMPO, PMPPC, and CICM ("IPSCMI's Certification Marks").  IPSCMI uses its Name Marks and Certification Marks (collectively, "IPSCMI's Marks") in concert to designate IPSCMI as the source of its certifications.  (*Id.* at ¶¶ 14–17).

IPSCMI provides purchasing and supply chain management courses and programs in the United States and abroad through a network of alliance partners that contract with IPSCMI to conduct IPSCMI's programs.  IPSCMI has established alliance partner relationships with more than 50 organizations worldwide and has certified more than 60,000 students from 62 countries.  (*Id.* at ¶ 8).

Certification programs consist of three essential parts: training, testing, and certification.  (Graw Declaration at ¶ 3)[1].  Students who seek certifications receive training.  They are tested and, upon receiving a passing score, earn certifications.  (Graw Decl. at ¶ 4).

_____

[1] "Exhibit _" refers to Exhibits A-D attached to the Declaration of LeRoy H. Graw ("Graw Decl.") filed contemporaneously.

IPSCMI certifications last for 5 years, at which point, students must show recent training and/or professional experiences to recertify.  (Graw Decl. at ¶ 8).  Once a student has obtained a certification, IPSCMI expects to provide that student training and/or recertification, either directly or through alliance partners.  (Graw Decl. at ¶¶ 8, 10).

IPSCMI maintains contractual relationships with alliance partners who provide training and/or testing services to students.  (D.I. 1 at ¶¶ 8, 67; Graw Decl. at ¶ 6).  IPSCMI's alliance partners work in various geographic regions to host conferences, perform in-person and virtual training, arrange testing, and work with national and regional authorities to facilitate marketplace uptake of IPSCMI certifications.  (Graw Decl. at ¶ 7).

As a result of continued operation in the marketplace since 2005, students and alliance partners within the relevant industries perceive IPSCMI's well-known Marks to be associated with high-quality instruction and certification.  (D.I. 1 at ¶ 10).

IPSCMI maintains a website at IPSCMI.ORG where it provides students and alliance partners information about its programs.  IPSCMI's website employs a blue and white color theme.  The website provides a U.S. telephone number with a

Delaware ("302") area code accompanied by an admin@ipscmi.org email address

in the site header



and further identifies IPSCMI's address as "16192 Coastal Highway Lewes,

Delaware 19958, USA" in the site footer as in the image below. (*Id.* at ¶ 11).



Repeated across IPSCMI's website is an "About IPSCMI" description in a

sans serif typeface using white letters on a dark blue background with a light blue

bar below the heading:

The text reads: "IPSCMI is a prestigious and leading professional institute offering purchasing and supply chain management certifications throughout the world in all modes of instruction, including conventional public seminars, online courses, in-house seminars."  (*Id.* at ¶ 12).

IPSCMI maintains an electronic presence using the IPSCMI Marks on online communities and platforms including:  LinkedIn (as "IPSCMI" at https://www.linkedin.com/company/the-international-purchasing-and-supply-chain-management-institute/), and Facebook (as "International Purchasing and Supply Chain Management Institute-IPSCMI" at https://www.facebook.com/International-Purchasing-and-Supply-Chain-Management-Institute-IPSCMI-103107931604733).  (*Id.* at ¶ 13).

In view of IPSCMI's Marks and established position in the industry, there is a reasonable probability that students seeking one or more of IPSCMI's well-known certifications would seek instruction and/or certification from IPSCMI

and/or one of IPSCMI's alliance partners.  (*Id.* at ¶ 55).  Similarly, there is a reasonable probability that potential alliance partners seeking to provide instruction and testing related to one or more of IPSCMI's well-known certifications would seek a business relationship with IPSCMI.  (*Id.* at ¶ 61).

### B.    Defendant

Defendant was organized in Delaware in October 2023.  (*Id.* at ¶ 18).  Beginning at least in May 2024, Defendant has operated websites at [IPSCMI.COM](IPSCMI.COM) and [IPSCMI.US](IPSCMI.US).  (*Id.* at ¶ 19).  On these websites and elsewhere, Defendant uses INTERNATIONAL PROCUREMENT AND SUPPLY CHAIN MANAGEMENT INSTITUTE and the initialism IPSCMI.  These websites employ a blue and white color theme similar to IPSCMI's website.  (*Id.* at ¶ 20).

Defendant's websites provide a U.S. telephone number with a Delaware ("302") area code accompanied by an email address: admin@ipscmi.us in the site header



and further identify Defendant's address as "16192 Coastal Highway Lewes,

Delaware 19958, USA" in the site footer as in the image below.  (*Id.* at ¶ 21).



The footer of Defendant's website includes an "IPSCMI" heading with a

description of Defendant's organization that is substantially similar to the "About

IPSCMI" heading in the footer of IPSCMI's website.  Moreover, the description on

Defendant's website is in a nearly identical sans serif typeface using white letters

on a dark blue background with a light blue bar below the heading:

The text reads: "IPSCMI, an official and top professional institute, provides procurement and supply chain management certifications globally in various instructional methods, including traditional public seminars, online courses, and in-house seminars." This description is substantially similar to the "About IPSCMI" description on IPSCMI's website – with words replaced with synonyms but with the overall structure and content remaining the same. (*Id.* at ¶ 22).

Since at least May, 2024, Defendant has maintained an electronic presence on online communities and platforms including: LinkedIn (as "IPSCMI Official" at https://www.linkedin.com/company/ipscmi-official), Twitter or X (as "IPSCMI" at https://twitter.com/ipscmi), and Facebook (as "IPSCMI" and "Ipscmi" at https://www.facebook.com/ipscmi.official). (*Id.* at ¶ 23).

Defendant's website states that Defendant maintains supply chain management, purchasing management, and other certification programs. (*Id.* at ¶¶ 26, 28–29). Defendant has given its certifications names that are nearly identical to the marks used by IPSCMI, including: CISCP, CISCM, CIPP, CIPM, CICCM, CIPN, CITLP, CISM, CIWIM, CMPO, PMPPC, and CICM. (*Id.* at ¶ 31).

Defendant's website equates these certifications with "IPSCMI", stating in testimonials that—through Defendant—an individual can get a "CISCM certification from IPSCMI", a "CMPO certification from IPSCMI", and a "CISM-IPSCMI certification[.]" (*Id.* at ¶¶ 24, 27, 30).

**C.    Acts**

In May 2024, Defendant sent emails from ADMIN@IPSCMI.US to a number IPSCMI instructors and alliance partners, offering "IPSCMI" testing and certification services at the IPSCMI.US website as an alternative to testing and certification services available at Plaintiff's IPSCMI.ORG website.  (*Id.* at ¶ 34).

As a result of these contacts, and the confusing similarities between IPSCMI's certifications and Defendant's certifications, IPSCMI's instructors and alliance partners contacted IPSCMI about a so-called "Fake IPSCMI."  (Graw Decl. at ¶ 11).  The alliance partners were confused about the source of the emails from Defendant and the source of the certification programs offered.  These individuals were confused as to whether Defendant and IPSCMI were the same organization or whether Defendant was affiliated with IPSCMI.  (D.I. 1 at ¶ 35; Graw Decl. at ¶ 12, Exhibit A).

Students have also been confused between IPSCMI and Defendant.  (D.I. 1 at ¶ 40; Graw Decl. at ¶¶ 13–14, Exhibit B).  In email communications, Defendant is virtually indistinguishable from IPSCMI.  (Graw Decl. at ¶¶ 15–16, Exhibit C).

Also at times after May 2024, at least one student previously certified in IPSCMI's programs has taken a certification examination offered by Defendant at Defendant's website (IPSCMI.US) with the expectation of receiving a certification provided by IPSCMI.  (D.I. 1 at ¶ 37; Graw Decl., Exhibit B at 1–3).

10

On July 15, 2024, IPSCMI sent Defendant a cease and desist letter, demanding that Defendant cease all activities infringing IPSCMI's Marks. Defendant acknowledged receipt of this letter.  (D.I. 1 at ¶¶ 38–39).

Since July 2024, Defendant has continued to contact IPSCMI's alliance partners and students via email to offer purchasing/procurement and supply chain management certifications.  For example, Defendant has sent marketing offers to individuals holding IPSCMI's well-known certifications, offering "Exclusive Lifetime Certifications".  (D.I. 1 at ¶ 40; Graw Decl., Exhibit B at 2).  As a result of these mailings, students and alliance partners continue to contact IPSCMI because they are confused as to whether:  Defendant and IPSCMI are the same organization, Defendant's certifications are the same as IPSCMI's, and/or the emails are false or fraudulent.  (D.I. 1 at ¶ 40; Graw Decl. at ¶¶ 11-14, Exhibits A–B).

Based upon Defendant's actions offering its testing and certification services as an "alternative" to testing as IPSCMI's website, IPSCMI's alliance partner in Egypt has told one or more students enrolled in IPSCMI's programs that the students have a choice between using IPSCMI's website (IPSCMI.ORG) or Defendant's website (IPSCMI.US) to take certification examinations.  (D.I. 1 at ¶¶ 36, 71; Graw Decl. at ¶ 17).  This is in violation of the agreement between IPSCMI and the Egyptian alliance partner.  Based upon this breach of contract, in

September 2024, IPSCMI terminated the contract between the parties.  (D.I. 1 at ¶¶ 36, 71; Graw Decl. at ¶¶ 17–19, Exhibit D).

As a result of Defendant's actions described herein, IPSCMI has suffered and will continue to suffer harm to its business reputation, branding, certifications, relationships with its alliance partners, and relationships with current and prospective students.  (Graw Decl. at ¶ 20).

## IV.  LEGAL STANDARDS

### A.  Default Judgment

Default judgment is a two-step process.  "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  If plaintiff's claim is for a sum certain, the Clerk of Court must enter default judgment, but "[i]n all other cases, the party must apply to the court for a default judgment."  *Id.*, 55(b).

"Before entering a default judgment, the Court must decide whether 'the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"  *Insight Invs., LLC v. Bos. Mkt. Corp.*, No. 23-CV-1077-GBW, 2024 WL 1637320, at *2 (D. Del. Apr. 16, 2024) (quoting *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)) (other citations omitted); *see also Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D.

Pa. 2015). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) *see Eden Foods, Inc. v. George*, No. CV 22-409-RGA, 2023 WL 2926592, at *2 (D. Del. Apr. 13, 2023) (applying the *Chamberlain* factors when a defendant has not appeared), *report and recommendation adopted,* No. CV 22-409-RGA, 2023 WL 3275765 (D. Del. May 5, 2023).

### B.    Permanent Injunction

"[A] party seeking a permanent injunction must make a sufficient showing that (1) it will suffer irreparable injury, (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." *TD Bank N.A. v. Hill*, 928 F.3d 259, 278 (3d Cir. 2019) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## V.    ARGUMENT

### A.    The Unchallenged Facts Constitute a Legitimate Cause of Action

#### 1.    Count I: False Designation of Origin

The unchallenged facts constitute a legitimate cause of action for false

designation of origin under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a),

which states:

> (1) Any person who, on or in connection with any goods
> or services, or any container for goods, uses in commerce
> any word, term, name, symbol, or device, or any
> combination thereof, or any false designation of origin,
> false or misleading description of fact, or false or
> misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause
>> mistake, or to deceive as to the affiliation,
>> connection, or association of such person with
>> another person, or as to the origin, sponsorship, or
>> approval of his or her goods, services, or
>> commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion,
>> misrepresents the nature, characteristics, qualities,
>> or geographic origin of his or her or another
>> person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who
> believes that he or she is or is likely to be damaged by
> such act.

15 U.S.C. § 1125(a).  "In any proceeding under the Lanham Act the gist of the

proceeding is a 'false description or representation,'" *Societe Comptoir De*

*L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept Stores, Inc.,*

299 F.2d 33, 36 (2d Cir. 1962) (citing 15 U.S.C. § 1125(a)).  "[T]he principal question in a § [1125](a) analysis 'is whether or not the public is likely to be confused[.]'" *CPG Prod. Corp. v. Pegasus Luggage, Inc.*, 776 F.2d 1007, 1012 (Fed. Cir. 1985) (citation omitted).

The unchallenged facts demonstrate that the public is likely to be confused. IPSCMI provides training, testing, and certifications for purchasing and supply chain management professionals.  Defendant offers, to these same individuals, certifications that are nearly identical to IPSCMI's.  Moreover, Defendant has chosen a corporate name and initialism–"International Procurement and Supply Chain Management Institute" and "IPSCMI"–which are nearly identical to IPSCMI's Marks.  These similarities are summarized in the table below.

|  | IPSCMI | Defendant |
|---|---|---|
| **Company name** | International Purchasing and Supply Chain Management Institute LLC | International Procurement and Supply Chain Management Institute LLC |
| **Initialism** | IPSCMI | IPSCMI |
| **"About"** | purchasing and supply chain management courses and programs | procurement and supply chain management certifications |
| **URL(s)** | IPSCMI.ORG | IPSCMI.US IPSCMI.COM |

|  | IPSCMI | Defendant |
|---|---|---|
| **Supply Chain Certifications** | • Certified International Supply Chain Professional (CISCP, Level 1)<br>• Certified International Supply Chain Manager (CISCM, Level 2) | • Certified International Supply Chain Professional (CISCP)<br>• Certified International Supply Chain Manager (CISCM) |
| **Purchasing Certifications** | • Certified International Purchasing/Procurement Professional (CIPP, Level 1);<br>• Certified International Purchasing/Procurement Manager (CIPM, Level 2) | • Certified International Procurement Professional (CIPP)<br>• Certified International Procurement Manager (CIPM) |
| **Other Certifications** | • Certified International Commercial Contracts Manager (CICCM)<br>• Certified International Professional Negotiator (CIPN)<br>• Certified International Trade, Shipping & Logistics Professional (CITLP)<br>• Certified International Sourcing Manager (CISM)<br>• Certified International Warehouse and Inventory Manager (CIWIM)<br>• Certified Manager of Production Operation (CMPO)<br>• Project Management Professional in Procurement and Contracting (PMPPC)<br>• Certified International Category Manager (CICM) | • Certified International Commercial Contracts Manager (CICCM)<br>• Certified International Professional Negotiator (CIPN)<br>• Certified International Trade, Shipping & Logistics Professional (CITLP)<br>• Certified International Sourcing Manager (CISM)<br>• Certified International Warehouse and Inventory Manager (CIWIM)<br>• Certified Manager of Production Operation (CMPO)<br>• Project Management Professional in Procurement and Contracting (PMPPC)<br>• Certified International Category Manager (CICM) |

Defendant's entire market presence is essentially a false description or representation.  In May 2024, Defendant launched a website at IPSCMI.COM and IPSCMI.US, employing a color scheme, typeface, design, and look and feel nearly identical to IPSCMI's website at IPSCMI.ORG.  It also maintains a social media presence under these marks.  In addition to the facial similarities between IPSCMI's and Defendant's products, services, and marks, the unchallenged facts demonstrate instances of actual confusion.  Therefore, the Defendant's acts are likely to cause confusion, or to cause mistake, or to deceive in violation of IPSCMI's rights under 15 U.S.C. § 1125(a)(1)(A).  The unchallenged facts also show that Defendant is selling testing services and certifications that are identical to, and indistinguishable from, IPSCMI's well-known certifications.  As such, Defendant's website misrepresents the nature, characteristics, and qualities of Defendant's certification programs by equating them to IPSCMI's certifications, even though no such relationship exists.  This is a violation of IPSCMI's rights under 15 U.S.C. § 1125(a)(1)(B).  For these reasons, the unchallenged facts constitute a legitimate cause of action for false designation of origin.

### 2. Count II: Delaware Deceptive Trade Practices

The unchallenged facts constitute several violations of the Delaware Deceptive Trade Practices Act.  6 *Del. C.* §§ 2531 *et seq.*  Under the statute:

> A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:
>
> (1) Passes off goods or services as those of another;
>
> (2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;
>
> . . .
>
> (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>
> . . .
>
> (7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[.]

6 *Del. C.* § 2532(a). The unchallenged facts show that Defendant is passing off its testing and certification services as the same as those of IPSCMI. *Id.*(a)(1).

As discussed above, Defendant is causing a likelihood of confusion or of misunderstanding that IPSCMI is the source of the certifications for which Defendant offers testing in violation of subsection (a)(2). Students have purchased testing from Defendant, thinking it would lead to IPSCMI's certifications. (Graw Decl., Exhibit B).

18

Similarly, in violation of IPSCMI's rights under subsection (a)(3), Defendant causes likelihood of confusion or of misunderstanding as to the connection or association between Defendant and IPSCMI, even though no such relationship exists.  The likely confusion includes: (a) that Defendant and IPSCMI are the same entity; (b) that Defendant's training or testing will provide a student with IPSCMI's certifications; and/or that Defendant's certifications and IPSCMI's certifications are one and the same.  *Id.*(a)(3).

With respect to testing and individual certifications, as discussed above, Defendant's acts, including publishing website testimonials (D.I. 1 at ¶¶ 24, 27, 30), represent to students that the underlying certifications are those of IPSCMI and that students will, in obtaining Defendant's certifications, have the benefits associated with IPSCMI's well-known certifications in violation of IPSCMI's rights under 6 *Del. C.* § 2532(a)(5).  Similarly, Defendant's website represents that its certification programs are of a particular standard, quality, or grade, namely that Defendant's certification programs are of the same standard, quality, or grade as IPSCMI's certification programs in violation of IPSCMI's rights under subsection (a)(7).

For these reasons, the unchallenged facts demonstrate that Defendant has violated IPSCMI's rights under the Delaware Deceptive Trade Practices Act.

### 3.    Count III: Tortious Interference

Defendant's acts constitute tortious interference with both existing and prospective business relations.  "Under Delaware law, to prevail on a tortious interference claim, a plaintiff must show that the defendant knew of a contract involving the plaintiff, intentionally and improperly interfered with it, and was a significant factor in causing the contract to be breached or otherwise terminated." *Cousins v. Goodier*, 283 A.3d 1140, 1160 (Del. 2022) (citations omitted).

### (a)    Existing Business Relations

As discussed above, IPSCMI maintains contractual relationships with alliance partners that provide training and testing services in support of certification programs.  (D.I. 1 at ¶ 67).  These alliance partners are identified on IPSCMI's website.  IPSCMI, https://www.ipscmi.org/List_of_Partners/ (Last Visited Oct. 16, 2024).  As is demonstrated by Defendant's actions in contacting IPSCMI's alliance partners and offering services to these alliance partners as an alternative to IPSCMI (D.I. 1 at ¶ 34), Defendant clearly knew of these business relationships and intentionally interfered with them.  Defendant's actions were improper, because Defendant sought to capitalize on confusion between Defendant and IPSCMI, including confusion between Defendant's certifications and IPSCMI's well-known certifications.  As a result, one of IPSCMI's alliance partners breached its contract with IPSCMI by offering its students the option of

pursuing testing with either IPSCMI or Defendant.  (*Id.* at ¶¶ 36, 71; Graw Decl. at ¶ 17).  But for Defendant's actions, the alliance partner would not have offered the "alternative" and breached the contract.  IPSCMI has since terminated the contract with this alliance partner.  (Graw Decl. at ¶¶ 18–19, Exhibit D).  This has caused IPSCMI harm.  (D.I. 1 at ¶¶ 72–73; Graw Decl. at ¶ 20).  For these reasons, the unchallenged facts support a claim of tortious interference with existing business relations.

### (b)    Prospective Business Relations

The unchallenged facts show that even though IPSCMI does not maintain a contractual relationship with students who obtain IPSCMI's certifications, IPSCMI has a reasonable expectation that students seeking IPSCMI's well-known certifications will do business with IPSCMI and/or IPSCMI's alliance partners to obtain certifications.  (D.I. 1 at ¶ 55).  IPSCMI also has a reasonable expectation that potential alliance partners seeking to provide instruction and testing associated with IPSCMI's well-known certifications would seek a business relationship with IPSCMI.  (*Id.* at ¶ 61).  Moreover, IPSCMI has a reasonable expectation that a percentage of students will recertify after 5 years.  (Graw Decl. at ¶ 10).

Defendant demonstrated knowledge about both certification and recertification by sending marketing offers to students, such as those offering "Exclusive Lifetime Certifications."  (D.I. 1 at ¶ 40; Graw Decl., Exhibit B at 2).

21

Defendant's acts were clearly intentional marketing activities that sought to interfere with the reasonably expected activities of student training, testing, certification and/or recertification associated with IPSCMI's well-known certifications. Defendant's actions were improper, because Defendant sought to capitalize on confusion between Defendant and IPSCMI, including confusion between Defendant's certifications and IPSCMI's well-known certifications. This has caused students to purchase testing, certification and/or recertification from Defendant with an expectation of obtaining IPSCMI's certifications. Alliance partners have also done business with Defendant with an expectation of providing training and testing for IPSCMI's certifications. This has caused IPSCMI harm. (D.I. 1 at ¶¶ 59–60, 65–66; Graw Decl. at ¶ 20). For these reasons, the unchallenged facts support a claim of tortious interference with prospective business relations.

> **B.    The *Chamberlain* Factors Support Default Judgment**

The *Chamberlain* factors support entry of default judgment in favor of IPSCMI and against Defendant. "When a district court enters a default judgment, 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 161 (3d Cir. 2022) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)). Taking the factual allegations in the Complaint as

true, and for the reasons discussed above, IPSCMI has demonstrated that Defendant has violated IPSCMI's rights against false designation of origin under the Lanham Act, deceptive trade practices under the Delaware's Deceptive Trade Practices act, and tortious interference under the common law.

First, IPSCMI will be prejudiced if default is denied. Violation of IPSCMI's rights, with no other avenue for IPSCMI to seek a remedy, is sufficient to establish the first factor. *E.g.*, *BTL Indus., Inc. v. Advanced Regenerative Med. LLC*, No. CV 23-359-WCB, 2024 WL 455218, at *3 (D. Del. Feb. 6, 2024) (citations omitted). Second, Defendant has not appeared and, therefore, has no litigable defense at this point. *E.g.*, *DoiT Int'l, LTD v. BlackSwan Techs., Inc.*, No. CV 23-560-MN, 2023 WL 6211722, at *2 (D. Del. Sept. 25, 2023)*, report and recommendation adopted sub nom. DoiT Int'l, Ltd. v. BlackSwan Techs., Inc.*, No. CV 23-560 (MN), 2023 WL 7408034 (D. Del. Nov. 9, 2023). And finally, Defendant's failure to appear amounts to culpable conduct with respect to the third factor. *Eden Foods*, 2023 WL 2926592, at *4 (citation omitted). For these reasons, IPSCMI respectfully requests that the Court enter default judgment.

## C.    A Permanent Injunction Is Appropriate

The Court should enter a permanent injunction in favor of IPSCMI and against Defendant, because IPSCMI will suffer irreparable injury, there is no

adequate remedy at law, the balance of the hardships favors IPSCMI, and an injunction against Defendant would not disserve the public interest.

First, the facts show that IPSCMI has been irreparably injured. Defendant is essentially pretending to be IPSCMI and selling IPSCMI's well-known certifications. The Lanham Act provides injunctive relief for false designations of origin under 15 U.S.C. § 1125(a) and states that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction[.]" 15 U.S.C. § 1116. Additionally, the Third Circuit has held that "[a] finding of irreparable injury can also be based on likely confusion." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 196-97 (3d Cir. 1990) (citations omitted). Here, the unchallenged facts demonstrate a likelihood of confusion and a violation of § 1125(a), which supports at least the rebuttable presumption of irreparable injury under the false designation claim. For the same reasons, Delaware law supports a finding of irreparable injury with respect to the Deceptive Trade Practices and tortious interference claims. 6 *Del. C.* § 2533.

Second, IPSCMI has no adequate remedy at law to compensate it for consumer confusion. This is not a simple case of marketplace competition where students choose between different alternatives for certification programs. Here, the unchallenged facts show a purposeful likelihood of confusion in which students

purchase services from Defendant with the expectation that they receive Plaintiff's well-known certifications. Not only does IPSCMI not receive revenues, but the student does not obtain the intended certification. Any confusion or harm to the student will ultimately harm IPSCMI, because the student has purchased an "IPSCMI" certification and expects IPSCMI to resolve the issue. (*E.g.*, Graw Decl., Exhibit B at 4 (contacting IPSCMI to resolve student confusion)). An award of damages would not compensate IPSCMI for this tremendous loss of goodwill.

Third, the balance of the hardships favors IPSCMI. "There is no cognizable hardship" to Defendant in prohibiting it from violating IPSCMI's rights against false designations of origin, deceptive trade practices, and tortious interference with business relations. *BTL Indus.*, 2024 WL 455218, at *5.

Finally, "[p]ublic interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused. *Opticians Ass'n of Am.*, 920 F.2d at 197. The public interest disfavors marketplace confusion associated with false designations of origin, deceptive trade practices and tortious interference.

All four factors favor a permanent injunction in favor of IPSCMI and against Defendant.

**D.    The Unchallenged Facts Support a Finding that This Case is Exceptional and an Award of Fees and Costs**

Under the Lanham Act, having established a violation for false designation of origin, "the plaintiff shall be entitled . . . subject to the principles of equity, to recover . . . the costs of the action."  15 U.S.C. § 1117(a).  In view of the default judgment, an award of costs is appropriate.

Also under the Lanham Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party.  *Id.*; *see also* 6 *Del. C.* § 2533(b) ("Costs or attorneys' fees may be assessed against a defendant only if the court finds that defendant has wilfully engaged in a deceptive trade practice.").  "Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion."  *Rath v. Vita Sanotec, Inc.*, No. CV 17-953 (MN), 2020 WL 5877597, at *2 (D. Del. Oct. 2, 2020)* (citation omitted).  In this matter, Defendant has willfully copied Plaintiff's name, certifications, URL, and website design.  Defendant's apparent strategy is to pass off its own testing and certifications as those of IPSCMI.  Here, the merits support a finding that the case is exceptional.  *See Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. CV 20-1652-GBW, 2023 WL 6387897, at *3 (D. Del. Sept. 29, 2023)* (finding a case to be exceptional when "the Amended Complaint pled facts that Defendants intentionally mislead buyers, sed [sic] Emerson Radio's intellectual property to create confusion, and

26

made false representations about Defendants' association with Emerson Radio.").

Upon a finding that this case is exceptional, Plaintiff respectfully requests an award

of fees.

## VI.    CONCLUSION

For the foregoing reasons, IPSCMI respectfully requests entry of default

judgment, an order of injunction, a finding that this matter is exceptional, and an

award of fees and costs.

Dated: October 18, 2024

**SMITH KATZENSTEIN & JENKINS LLP**

*/s/ Daniel A. Taylor*
Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

*Attorneys for Plaintiff International Purchasing and Supply Chain Management Institute LLC*

## <u>WORD COUNT CERTIFICATION</u>

The undersigned certifies that the foregoing document contains 4,980 words (exclusive of the cover page, table of contents, table of authorities, pictures, figures, illustrations, and signature block) in Times New Roman 14-point font, counted using Microsoft Word's word count feature.


*/s/ Daniel A. Taylor*
Daniel A. Taylor (No. 6934)